Submitted on briefs March 8, decided April 27, 1910.

## HEWITT *v*. SMITH.

[108 Pac. 177.]

MORTGAGES—FORECLOSURE—EVIDENCE.
In a suit to foreclose a mortgage securing a note, evidence *held* to show that defendants had a set-off against the note of the proceeds from a contract with the payee to board him and do his washing for $120 a year, to perform his road work for $10 a year, and pay him $30 cash a year, all to be credited on the note.

From Linn: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by H. H. Hewitt as executor of the last will and testament of Edward Loat, deceased, against John Smith and Martha A. Smith, his wife, to foreclose

a mortgage. On December 11, 1883, defendant John Smith executed to Edward Loat his promissory note for the sum of $1,600, payable one year after date, with interest at the rate of ten per cent per annum, and containing the usual clause for attorney's fees. Afterward the rate of interest was reduced to five per cent and to secure the payment of the note defendants executed to Loat a mortgage upon 160 acres of land in Linn County, Oregon. It is admitted by the complaint that $500 have been paid on the principal of the note, and that the interest was paid until December 11, 1903, that Loat died January 12, 1904, and that plaintiff is the duly appointed and acting executor of the will of decedent. Plaintiff asks for judgment and a decree foreclosing the mortgage.

The answer admits the execution of the note and mortgage as alleged, but denies that the note is unpaid, and alleges that on December 11, 1885, defendants entered into an agreement with Loat, whereby they should furnish him board and lodging, do his laundry work, take care of him in case of sickness, supply him with $30 annually, and do his road work. Loat agreed to pay $120 per annum for his board, washing, and care, and credit on the note the amount of cash advanced, the board at $120, and the road work. The answer also alleges that defendants furnished the board and $30 in cash annually, cared for Loat, did the laundry, and performed the road work to the amount of $10 annually, until 1898, amounting in all to $2,893; and pleads the same in payment of the note, and asks for the balance thereof, after satisfying the note.

The affirmative matter of the answer is put in issue by the reply. The cause was tried by the court and a decree rendered in favor of defendants. Plaintiff appeals.

                                        Affirmed.

For appellant there was a brief over the names of *Mr. Carlton E. Sox* and *Mr. John J. Whitney.*

For respondents there was a brief over the names of *Messrs. Weatherford & Wyatt.*

MR. JUSTICE EAKIN delivered the opinion of the court.

It appears from the evidence that Loat was the stepfather of defendant John Smith, and that, about the date of the note, he, being about 68 years old, went to live with defendants, under an arrangement by which the price of his board was to be applied on the note. The first indorsement on the note is a statement that the interest shall be at the rate of five per cent, and not ten. This indorsement is not dated, but was evidently made about March 23, 1886. It is erased by both ink and pencil marks, following which are many indorsements of interest and of two payments upon the principal, viz., $400, May 6, 1896; $100, September 10, 1898. At the time of his death, Loat had a memorandum in his own writing as follows:

"(April 30, 1887.   Cash 2 dolls (two)"

"March 23, 1886.   On my return this day to Crackersneck from the 'Crossing' of the narrow guage & Lebanon Railways, John Smith paid me *49½ dollars which is the balance of the interest due to me on the 1600 note for two years, 1883 & 1884, up to Dec. 1885. The same is credited on the record of the mortgage at Albany......E. Lt. Memm. This is the 1st cash payment he has made me. My board & washing & the work of my road tax by him being considered equal to the other part of the interest at ——— per cent (not ten) as the note was drawn ten by mistake.

"This int. at 10 per cent per an. on 1600 — $160.

   30—Cash       30$ per year to pay the Tax.

   10 Road Tax 10$ value of road work done.

  120 Board     120$ value of board and washing, being at the rate of 2 30-100 per week.

160               160$"

There are also other memoranda on the same paper but not important here.

Plaintiff produced testimony tending to show that defendants were to board Loat and pay him $30 cash each year for the interest on the note. And defendants produced testimony tending to show that they were to furnish Loat his board and do his washing for $120 per annum, perform his road work for $10 a year, and pay him cash $30 a year, all of which was to be credited on the note. This would just pay the interest on the note at ten per cent as the note was written, and these terms were recognized by Loat for more than two years, at which time he reduced the rate of interest to five per cent, as shown by the indorsements on the note and by the memoranda. The testimony is very indefinite as to the making of the agreement and when and where it was made, but it is sufficiently established. Plaintiff lays stress upon the admissions of Smith made to Hewitt soon after the death of Loat to the effect that there were $1,100 due on the note. But Smith was evidently speaking with reference to the fact that the two payments on the principal reduced it to $1,100, and was not inconsistent with his claim that he had an offset against the note. His statements to Hewitt are not all consistent with his testimony; but, in the light of the whole of the evidence, the conflict is not such as to discredit him. There is no doubt that the first agreement was that Loat was to pay $120 per annum for his board and washing, and there does not appear to have been any agreement or understanding between them by which it was changed. Loat's memoranda show that he allowed $120 for each of the first two years, in which he states, it is "value of board and washing, being at the rate of $2.30 per week." By plaintiff's theory defendants were only receiving $40 a year, 77 cents a week for Loat's board, washing, and care during sickness, and, after the payment of the $500 on the principal but 28 cents a week. This would be no compensation, and evidently was not contemplated by

either party. Defendants testify that the agreement was
$2.30 for board and washing, and Repley testified that
Loat told him he was to pay $120 a year. From the whole
testimony in the case we think this is established by the
preponderance of the evidence.

Decree affirmed.                            AFFIRMED.